## LA POINT v. HOWLAND PAPER CO.

(Supreme Court, Appellate Division, Third Department. July 8, 1902.)

1. MASTER AND SERVANT—NEGLIGENCE—LATENT DEFECT.

Where plaintiff's intestate, while working in defendant's mill, was killed by the bursting of a steam pipe which had been purchased of approved makers and been in use for a year, and no negligence was shown in the adjustment, arrangement, or management of the pipe, but it appeared after the accident that at the point where the pipe burst it was less than half the standard and supposed thickness, a defect which defendant did not know and could not discover until the pipe was broken, defendant could not be held liable to damages for the accident.

Appeal from trial term.

Action by Caroline La Point as administratrix of the estate of Peter La Point against the Howland Paper Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

The plaintiff's intestate, an employé of the defendant, was killed by the bursting of a steam pipe then being used in its paper mill. It is claimed that it burst through the negligence of the defendant, and this action is brought to recover, under the statute, damages for the death so occasioned. Upon the trial a verdict was rendered for the plaintiff to the amount of $4,750, and from the judgment entered thereon and from an order denying a new trial this appeal is taken.

Before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

E. W. Douglas and Lewis E. Carr, for appellant.
W. E. Young and T. F. Hamilton, for respondent.

PARKER, P. J. The pipe which burst and caused the death of the plaintiff's intestate was a cast-iron tee, which had been purchased by the defendant of approved makers, and which had been put into its mill about a year before the accident. All tees are tested by the makers before being put upon the market, and a tee of this size and style is sold to stand 125 pounds pressure to the square inch. After the breaking it was discovered that at the point where it broke the iron or shell was about $^3/_{16}$ of an inch thick, while the greater part was of the standard thickness for that size tee, viz., $^7/_{16}$ of an inch. If the pipe burst because the shell at that point was insufficient to stand the strain of 95 pounds steam pressure to the square inch, and if such thinness at that point was owing to a defective casting, it is conceded that the defendant was not responsible for the accident. The jury were substantially so instructed by the court, to which no exception was taken, and I understand the respondent's counsel so conceded upon the argument of this case.

But the claim is that, owing to the negligent manner in which the defendant's system of steam pipes (which was a very large one, extending through four long buildings) had been put up, the water in the pipes produced by the condensation of steam was not properly taken care of, thereby causing "water hammering," so-called, which weakened the pipes, caused rusting of the tee, and increased the pressure upon the pipes. That water hammering had existed in this system of pipes for a good many years, and to a considerable extent, there is abundant evidence to show; but that it had any effect in causing the explosion in question is, in my judgment, very far from being established. The principal claim upon which such an effect is based is that a short distance beyond this tee there was a "dead end" to the pipe, and that no sufficient drip pipes or valves were put there to take care of the water which would necessarily accumulate there from the condensed steam. But the preponderance of evidence is that two pipes, with valves for the express purpose of taking off such water, were there. It is true that the valves did not work automatically, but if constantly left open they were as sufficient as if they worked themselves; and there is no proof that those provided were ever shut. The plan of their construction was to have them open at all times when necessary to drain off the water. When so open they were sufficient, and the burden was upon the plaintiff to show that they were improperly closed, if she would base any claim of negligence upon the fact that they were not open. It is, further, an undisputed fact in the case that the mill began to run on Sunday night, and that steam had since then been forced through the pipes in question continuously and constantly up to the time of the accident on Friday morning. Thus the pipes and all water in them had been heated up to the steam temperature, and no "water

hammering" was occurring at the time the tee was broken. It is apparent, then, that the break itself was not caused by any extra blow or force caused by such hammering. No conflict between water and steam then existed in the pipes, because steam alone, after five days of constant steam pressure, was to be found there, and the force that the tee was then called upon to withstand did not exceed the 90 or 95 pounds initial pressure of steam as it left the boiler. As to the claim that the continued existence of "water hammering" in the pipes, at times when condensed steam existed there, had weakened this tee, I am unable to discover any evidence sufficient to establish it as a fact. There was evidence that the jarring and jumping of the pipes at such times would tend to weaken the joints, and also it appeared that the threads on one joint not far from this tee had been torn apart; but there is no proof that such jarring and jumping would have any effect to weaken the iron itself. The movement might tear out a thread in a joint, but not at all affect the strength of the iron in the pipe. There is no evidence that, in so short a time as one year, the jar which resulted from the "water hammering" in this system of pipes whenever the water from condensed steam was forced out by the introduction of live steam could at all affect or weaken the strength of the cast iron in that tee; and no verdict charging the defendant with negligence could properly be based upon that theory. It was also claimed that the thinness of the tee at the place where it broke was caused by the fact that, for want of a proper drip valve, water had stood in the tee, and by rusting had worn it down to that thickness; but, although there was frequent "water hammering" in the pipes, there is no proof that water stood in this tee, or caused it to rust from the standard thickness of $7/16$ down to $3/16$ of an inch. I do not find any proof that cast iron, in the space of a year, and used in the manner in which this tee was used, would so rust, or that there was the slightest reason to apprehend that it would. Nor, in the absence of clear proof that such rusting would be the natural effect of such a situation and use, do I think it a reasonable conclusion that this pipe did so rust. It is in proof that, in the process of casting, the core is sometimes accidentally moved, so that the tee is cast thinner in some places than in others. This occurs without being discovered, and the tee is put upon the market in this defective condition. It cannot be discovered by the inspection of the purchaser, and thus gets into a system of pipes in the same condition. From the evidence in this case, the reasonable conclusion is that this tee was cast in the same defective condition in which it was found after the explosion, and that the explosion occurred solely because of this defect. The standard thickness of $7/16$ is calculated sufficient to withstand a steam pressure of 125 pounds to the square inch, and it may very well be that, when reduced to less than one-half of that, it would yield to a pressure of 90 or 95 pounds. That this weakness in the tee is sufficient to account for the explosion seems very clear; and, upon the evidence before us, I am of the opinion that the defendant should not be charged with any negligence that contributed to it.

The evidence does not show that from the fact of "water ham-

mering" it should have apprehended a weakening in the strength
of the iron in this tee, either by rusting or excessive straining or
jarring; nor does the preponderance of evidence show that it was
so affected. It seems to have been an accident caused by a defect
in the casting, of which the defendant should not be charged with
knowledge, and for which it was not at all responsible. The verdict
is not sustained by the evidence, and therefore the judgment must
be reversed.

Judgment and order reversed on law and facts, and new trial granted;
costs to appellant to abide event. All concur.